**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

DAVID RAUB and
WILLIAM RAUB

      *Plaintiffs*,

*v.*

MOON LAKE PROPERTY
OWNERS' ASSOCIATION,
GREENWOOD TOWNSHIP,
THOMAS McCAULEY,
LINDA ARGUE, FRED LINDSEY,
LARRY MATHIAS, and JOHN
HAVRILLA,

      *Defendants*.[1]

_____/

CIVIL ACTION NO. 1:15-CV-13480

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR ATTORNEY FEES (Docs. 112, 117, 124)</u>

## I.    <u>RECOMMENDATION</u>

For the reasons stated below, **IT IS RECOMMENDED** that Defendants' Motions for Attorney Fees, (Docs. 112, 117), be **GRANTED**—*i.e.*, that Plaintiffs and Plaintiffs' counsel be held jointly and severally liable for the payment of (a) $102,174.80 to Defendants Greenwood Township, Fred Lindsey, Thomas McCauley as Township Trustee, Jim Havrilla, and Larry Mathias, and (b) $111,491.07 to Defendants Linda

---

[1] Oscoda County and Tim Whiting were terminated from this action on October 21, 2016. James Hervilla was terminated from this action on July 25, 2016.

1

Argue, Thomas McCauley, and Moon Lake Property Owners' Association. It is further recommended that Plaintiffs' Motion for Attorney Fees, (Doc. 124), be **DENIED**.

## II.   <u>REPORT</u>

### A.   **Introduction and Procedural History**

On February 24, 2017, I recommended this Court dismiss Plaintiffs' First Amended Complaint on *res judicata* grounds, (Doc. 104), and District Judge Ludington adopted this Report and Recommendation on April 13, 2017, (Doc. 108). Thereafter, all parties to this suit filed the instant motions for attorney fees, and more precisely: (1) Defendants Greenwood Township ("Greenwood"), Fred Lindsey, Thomas McCauley as Township Trustee, Jim Havrilla, and Larry Mathias (collectively, "First-Motion Defendants") filed their motion ("First Motion") on May 2, 2017, (Doc. 112); (2) Defendants Moon Lake Property Owners Association ("MLPOA"), Linda Argue, and Thomas McCauley (collectively, "Second-Motion Defendants") filed their motion ("Second Motion") on May 11, 2017, (Doc. 117); and (3) Plaintiffs David and William Raub filed their motion ("Third Motion") on May 16, 2016, (Doc. 124). The motions were referred to the undersigned. (Docs. 113, 118, 126.) Response and reply briefs have been filed in response to each motion. (Docs. 123, 125, 128, 132, 134-39). Each motion is therefore ready for determination.

Before delving into the merits of these motions, I shall outline certain facts and procedural happenings relevant to their disposition. Plaintiffs admit a longstanding feud with Defendants, and have filed numerous claims against them in a variety of settings. (Doc. 112, Exs. 1-2). The first was a 2011 lawsuit filed by Plaintiff William Raub

2

("William Raub") in Oscoda County Circuit Court ("Oscoda Circuit Court") against MLPOA, alleging claims under the Americans with Disabilities Act ("ADA"), which Plaintiffs similarly raised in the present action. *Compare* (Docs. 1, 71), *with* (Doc. 112, Ex. 3).

A signage dispute arose wherein Greenwood first posited, via letters, that Plaintiffs' signs violated its sign ordinance. Greenwood then filed a lawsuit, (Doc. 112, Ex. 8), eventually obtaining a default judgment against Plaintiffs. (Doc. 112, Ex.9). Following this default, Plaintiffs' attorney—Tonie Franzese—informed Greenwood that recent Supreme Court rulings rendered the subject ordinance unconstitutional, and Greenwood's attorney—Daniel White—agreed, offering to dismiss the lawsuit. (Doc. 112, Ex. 10). Plaintiffs instead filed their "Crossclaims" against Defendant Thomas McCauley in the Oscoda Circuit Court. (Doc. 112, Ex. 11). The same day, Plaintiff David Raub ("David Raub") filed a counter-complaint against Defendants MPLOA and McCauley in a pending 81st District Court of Michigan ("81st District Court") suit against him.[2] (Doc. 112, Ex. 4). Eventually, Plaintiffs would amend their counter-complaint in the Oscoda Circuit Court, (Doc. 112, Ex. 12), but not before filing the instant lawsuit in the Southern Division of the Eastern District of Michigan on October 5, 2015. (Doc. 1). As First-Motion Defendants aptly summarize: "Plaintiffs had three lawsuits going at once – State of Michigan 81st District Court, State of Michigan Oscoda

---

[2] MLPOA had filed a small-claims case against David Raub in the 81st District Court for failure to pay his Association dues. The counter-complaint David Raub filed removed the case to the regular division of that court, and resembled Plaintiffs' complaint and amended complaint in this case. *Compare* (Doc. 71), *with* Doc. 112, Ex. 4).

3

County Circuit Court and U.S. District Court – suing the same parties over the same issues." (Doc. 112 at ID 3057).

During the pendency of these cases, Greenwood amended its sign ordinance, and the Oscoda Circuit Court ultimately granted Greenwood's motion for summary disposition, dismissing the first and third counts of Plaintiffs' counter-complaint and granting nominal damages totaling $2.00. (Doc. 112, Ex. 13-15). This result came about partly because the Oscoda Circuit Court found that Greenwood's amended sign ordinance aligned with constitutional standards, and partly because neither Plaintiff appeared to testify at the trial for damages. (*Id.*). The 81st District Court similarly ruled against David Raub, finding that he provided "no basis in law or fact in his pleadings" to support a number of his positions, and later granted attorney fees to the defendants in the amount of $9,510 plus $19.70 postage. (Doc. 112, Exs. 5-6). Since the Oscoda Circuit Court decision—which "was decided on the merits," "was a final decision," and either resolved or could properly have resolved "matters asserted in the instant federal case"—I found the present suit barred on *res judicata* grounds and recommended its dismissal *in toto*. (Doc. 104 at 8). As noted, Judge Ludington agreed and adopted my recommendation. *See generally* (Doc. 108).

### B.    Governing Law

The traditional 'American rule' on attorney fees precludes the collection of a reasonable fee "from the loser" absent legislative guidance. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). The general exception is that a federal court may, "as a matter of law, resort to its inherent power to impose attorney's fees as a

4

sanction for bad-faith conduct," provided the court "exercise[s] caution in invoking its inherent power, and . . . compl[ies] with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees, . . ." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). When presented with a request for attorney fees, the court engages in two discrete inquiries: (1) whether attorney fees are justified, and (2) if so, in what amount.

### 1.     Deciding Whether To Award Fees

Aside from the Court's inherent power to award fees, a number of statutes provide for attorney-fee awards, relevantly: 42 U.S.C. §§ 1988, 12205, and 28 U.S.C. § 1927. Because all parties largely confine their discussion to these three statutory bases, I address the requirements of each in turn.

Section 1988 "allows prevailing parties (in the discretion of the court) in § 1983 suits to obtain attorney's fees from the losing parties." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 698 (1978). *See generally* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of . . . [42 U.S.C. §] 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, . . ."). The question whether to award fees thereunder, however, varies depending on the party; a prevailing plaintiff "ordinarily is to be awarded attorney's fees in all but special circumstances," while a prevailing defendant may earn fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 421 (1978). Where a defendant seeking

recovery fended off both frivolous and non-frivolous claims, evaluating their claim under § 1988 involves a 'but-for' test—namely, "whether the fees requested would not have accrued but for the frivolous claim[s]." *Fox v. Vice*, 563 U.S. 826, 839 (2011). "[T]he dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation. *Id.* at 838. In passing upon such a motion, "trial courts need not, and indeed should not, become green-eyeshade accountants" as "[t]he essential goal . . . is to do rough justice, not to achieve auditing perfection." *Id.*[3]

In the wake of an ADA lawsuit, 42 U.S.C. § 12205 grants courts discretion to "allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, . . ." 42 U.S.C. § 12205; *accord, e.g.*, *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 780 (6th Cir. 2011). Like § 1988, the Sixth Circuit has found that an award of fees under § 12205 is permitted to defendants "only 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Michigan Flyer, LLC v. Wayne Cty. Airport Auth.*, 162 F. Supp. 3d 584, 587 (E.D. Mich. 2016) (quoting *Baker*, 414 F. App'x at 780) (internal quotation marks omitted). Because such an award is "an

---

[3] The Supreme Court has expanded helpfully on this point, noting that cases where fee awards must be allocated based on claims "may well be . . . unlikely to arise with great frequency." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Many civil rights cases will present only a single claim. . . . [or] involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained . . . in relation to the hours reasonably expended on the litigation.").

extreme sanction," it "must be limited to truly egregious cases of misconduct." *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986).

Unlike sections 1988 and 12205, section 1927 grants courts power to require attorneys who "unreasonably and vexatiously" multiply "the proceedings in any case" to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Courts have 'broad discretion' when deciding whether to award sanctions under Section 1927." *Sandweiss v. Spirit Airlines, Inc.*, No. 16-CV-12114, 2017 WL 2438790, at *7 (E.D. Mich. June 6, 2017) (quoting *Northern Kentucky Right to Life Comm., Inc. v. Kentucky Registry of Election Fin.*, 134 F.3d 371, at *8 (6th Cir. Jan. 7, 1998) (unpublished table decision)). "[U]nlike sanctions imposed under a court's inherent authority, § 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). Where an attorney "intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings," he becomes a candidate for this punishment. *Id.*; *see, e.g.*, *NATALIE REESER, Plaintiff-Appellant, v. HENRY FORD HOSP., Defendant-Appellee.*, No. 16-2303, 2017 WL 2471265, at *5 (6th Cir. June 8, 2017) ("Although both parties are partly to blame for the acrimonious nature of this case, it seems that Henry Ford's counsel initiated much of the dilatory conduct. His continued improper use of the motion to strike and overall antagonistic behavior . . . coupled with the frivolous allegations contained in his most recent motion to strike, convince us that sanctions may be warranted."). As is the case

7

with other fee-shifting provisions, the party seeking recompense must demonstrate a causal nexus between the misconduct and the fees. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 n.5 (2017).

### 2.      Calculating a Reasonable Fee Award

In determining the amount of attorney fees to assess a non-prevailing party, federal courts utilize the 'lodestar approach'—that is, calculating the 'lodestar' amount and then adjusting it based on a series of moderating factors. As the Supreme Court has stated, the 'lodestar' is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Once the lodestar figure is established, the trial court is permitted to consider other factors, and to adjust the award upward or downward to achieve a reasonable result." *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004). These other factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3. "The primary concern in an attorney fee case is that the fee award be reasonable." *Blum v. Stenson*, 465 U.S. 886, 893 (1984). A rate consistent with "'prevailing market rates in the relevant community'" will typically be a reasonable rate. *Johnson v. City of Clarksville*, 256 F. App'x 782, 784 (6th Cir. 2007) (quoting *Blum*, 465 U.S. at 895). Of note, "the party seeking the attorney's fees bears the burden of

8

establishing" a reasonable hourly rate, but "[r]eference to the prevailing market rates in the relevant community usually suffices." *Hunt v. Hadden*, 159 F. Supp. 3d 800, 806 (E.D. Mich. 2016).

### C.   Analysis

Each motion at issue asserts different grounds for recovery. The First and Second Motions invoke 42 U.S.C. § 1988 and 28 U.S.C. § 1927, (Doc. 112, 117), and the Second also cites 42 U.S.C. § 12205 for support, (Doc. 117).[4] The Third Motion, by contrast, seeks recovery under 42 U.S.C. § 1988 and 28 U.S.C. § 2412. I address each motion in turn.

### 1.   First and Second Motions

In these motions, Defendants agree that Plaintiffs' behavior justifies a fee award. First-Motion Defendants contend that $102,174.80 constitutes a reasonable award in their favor, (Doc. 112 at ID 3074), while Second-Motion Defendants request an award of $111,491.07, (Doc. 117 at ID 3490). Plaintiffs, responding to both motions, suppose that both are untimely because Federal Rule of Civil Procedure 54(d)(2) requires that attorney fee motions be submitted within fourteen days of a judgment being rendered. (Doc. 123 at 7). Realizing that Local Rule 54.1.2(a) permits twenty-eight days to file such a motion,

---

[4] Second-Motion Defendants also briefly request fees specifically under Michigan's Elliott-Larsen Civil Rights Act and Federal Rule of Civil Procedure 54, as well as via the Court's inherent power to award fees. The arguments are little expanded upon, and I thus deem them waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995))). Because I find Defendants' fees justified under the more-expanded-upon authority cited, I decline to address these grounds further.

Plaintiff contends that Local Rule 54.1.2(a) conflicts with Federal Rule 54(d)(2), rendering the former invalid. Plaintiffs make no argument as to the fee calculations First- or Second-Motion Defendants furnish.[5]

As an initial matter, Plaintiffs' timeliness argument obstinately defies binding precedent denying any conflict between Local Rule 54.1.2(a) and Federal Rule 54(d)(2).

---

[5] Plaintiffs do suggest that, aside from Defense counsels' affidavits, any exhibits attached to the First and Second Motions "should not be admitted (or should be struck)" for failure to conform to Federal Rule of Evidence 901 or, alternatively, for failure to seek their admission via judicial notice under Federal Rule of Evidence 201. (Doc. 123 at 17). They also object that "[n]early every exhibit" should be stricken because "[t]he defendants have made no proper offer of proof, provided no authentication, no foundation, offered the documents as impermissible conclusions of law, and did not seek judicial notice of the alleged state court records," making them "impermissible hearsay . . . ." (Doc. 125 at 2) (citing Fed. R. Evid. 401, 602, 801-02, 1002). Plaintiffs address no particular exhibit in these objections, and fail to cite legal authority indicating authentication or judicial notice is necessary. Nor do the Federal Rules of Civil Procedure articulate requirements that exhibits submitted alongside motions for attorney fees must meet. Strangely, and as Second-Motion Defendants astutely note, "many of [the exhibits objected to] were created, produced, sworn to, are affirmed by Plaintiffs themselves, and were even drafted and filed by Plaintiffs' counsel who is not objecting to their authenticity. Other exhibits are pleadings and rulings in the state court proceedings, and even documents and proceedings before this Honorable Court." (Doc. 130 at ID 3873) (internal citations omitted). I find Plaintiffs' objection improperly made (at best) and therefore overruled. *Cf. Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-CV-1144, 2011 WL 5169384, at *4 (W.D. Mich. Oct. 31, 2011) ("Defendant's objection [to the authenticity of the state court records] is the kind of pettifoggery that has given lawyers a bad name since the time of Charles Dickens. The federal courts may take judicial notice of state court records.").

Alternatively, I note that the Federal Rules of Evidence (aside from those on privilege) provide little guidance as to motion practice such as this. Fed. R. Evid. 1101. Instead I refer to Federal Rule of Civil Procedure 56(c)(1)(A) for guidance, which permits parties to support factual positions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Objections thereto must aver that the materials cited "*cannot* be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added). Plaintiffs may suppose that their authenticity objection meets this standard, but it does not; indeed, Plaintiffs seem to acknowledge that many of these records *would be* admissible if presented in a manner to their liking. (Doc. 125). As such, Plaintiffs objections are ineffectual. *Accord Foreword Magazine, Inc.*, 2011 WL 5169384, at *2 ("{T]he objection contemplated by [Federal Rule of Civil Procedure 56(c)(2)] is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be.").

*Accord, e.g.*, *Epperson v. Colbert*, No. 16-3280, 2017 WL 624198, at *5 (6th Cir. Feb. 15, 2017) ("'District courts, however, 'remain free to adopt local rules establishing timeliness standards for the filing of claims for attorney's fees.'" (quoting *Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 105 F.3d 252, 257 (6th Cir. 1997))); *White v. New Hampshire Dept. of Emp't Sec.*, 455 U.S. 445, 454 (1982) (stating this rule). Plaintiffs are not mistaken in recounting that "'[l]ocal rules may not displace or conflict with the Federal Rules of Civil Procedure,'" (Doc. 123 at 8) (quoting *Lovejoy v. Owens*, 19 F.3d 1433 at *2 (6th Cir. Mar. 21, 1994) (unpublished table decision)), but their application of the rule proves misguided. As Local Rule 54.1.2(a) provides, parties have twenty-eight days to file motions for attorney fees following a court decision. Judge Ludington rendered judgment on this matter on April 13, 2017, (Docs. 108-09), First Motion was filed on May 2, 2017, and Second Motion was filed on May 11, 2017; both motions met the requisite deadline. *See generally* Fed. R. Civ. P. 6. Simple arithmetic invalidates Plaintiffs' argument. Unfortunately, Plaintiffs' counsel continues to lob unfounded and misguided arguments of the ilk that brought her to this position.

As for the substance of Defendants' motions, the record before this Court plainly justifies a fee award under 42 U.S.C. § 1988. To be sure, the fact that Plaintiffs' complaint was dismissed because it lacked merit "does not, and should not, equate with a determination that the claims were without foundation." *Northern Kentucky Right to Life Committee, Inc. v. Kentucky Registry of Election Fin.*, 134 F.3d 371, at *8 (6th Cir. Jan. 7, 1988) (unpublished table decision). The claims at issue, however, were frivolous, and Plaintiffs quite transparently recognized this. Their complaint, for instance, fabricated a

statement central to their conspiracy charge and attributed it to Defendant Havrilla. (Doc. 75, Ex. 1 at ID 1291). David Raub even admitted in an affidavit to pursuing the same claims "over the years" in this and other prior lawsuits. (Doc. 117, Ex. 11 at ID 3666-67). When faced with Plaintiffs' claims, the 81st District Court explicitly addressed their frivolity, albeit while opining 'after the fact' on why David Raub ought to pay attorney fees to certain Defendants here:

> At 06/08/15 hearing on Defendant's motion to set aside default, the court acknowledged Defendant's admissions that he was a member of Plaintiff association, that he owed dues, and that he was ready to pay. The court addressed issues raised by Defendant such as lien, marketable title, and Mr. McCauley's actions indicating they did not provide a basis for defending against the Plaintiff's claim for judgment on the debt. After the court granted Defendant's motion to set aside the default for good cause . . . the court advised Plaintiff to tailor his answer to the complaint. In spite of the court's admonition and Defendant's subsequent pleadings and amendment of pleadings, Defendant continued to assert claims in both answer and counterclaim that were devoid of arguable legal merit. . . . Defendant's pleadings are clearly frivolous.

(Doc. 117, Ex. 13 at ID 3679, 3681). The Oscoda Circuit Court likewise dispassionately noted that Defendants "did not limit" Plaintiffs' free expression, that Plaintiffs "maintained their signs . . . without interruption," and that only nominal damages were appropriate. (Doc. 112, Ex. 15). When I issued a recommendation to dismiss Plaintiffs' eleven counts, (Doc. 104 at 8), I agreed with these prior-court findings. (Doc. 104 at 8). Indeed, the record in this case amply validates the conclusion that Plaintiffs' complaint and amended complaint were largely frivolous.

Plaintiffs also invoke the purpose behind 42 U.S.C. § 1988 in their defense, noting that "[t]he Act was a legislative recognition of the need to level the playing field and

provide incentive for individual citizens to advance the public interest through private litigation, helping their attorneys take on the most difficult litigation to advance civil liberties as against the most formidable of opponents—the government." (Doc. 123 at 10). "The government parties in this case are aligned with the federal government within the meaning of 42 U.S.C. § 1988," and as such, "[i]t is as specious and wrongful for these defendants to move this Court, as it would be for the United States to do so, and it constitutes as gross a violation of the legislative intent under [§ 1988] for the defendants to so move a court, as it would be for the federal government to do so." (*Id.* at 10-11). To this, I simply remind Plaintiffs that the governmental parties in this case *are not* aligned with the federal government within the meaning of 42 U.S.C. § 1988; if they were, Congress would have included mention thereof in the statutory language. *See generally* 42 U.S.C. § 1988 (not equating local government entities or private organizations with the federal government). Moreover, § 1983 only protects "plaintiffs with potentially meritorious claims" from attorney fee requests, and as discussed above, Plaintiffs here do not meet this description. *Roane v. City of Mansfield*, 229 F.3d 1153, at *1 (6th Cir. Aug. 28, 2000) (unpublished table decision); *see, e.g.*, *Ridder v. City of Springfield*, 109 F.3d 288, 299 (6th Cir. 1997) ("[A] civil rights plaintiff does not have free rein to bring and pursue frivolous claims.").

Second-Motion Defendants also seek attorney fees under 42 U.S.C. § 12205, and they should have them. The analysis as to 42 U.S.C. § 1988 applies with equal force to the argument for fees under § 12205, subject to the same cautionary rule that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim

13

was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co.*, 434 U.S. at 422. Plaintiffs' claims were frivolous, and they continued to litigate even after the Oscoda Circuit Court struck down their claims, knowing that Defendants would raise *res judicata* in dispositive motions.

A fee award to First- and Second-Motion Defendants under 28 U.S.C. § 1927 is likewise justified. Ms. Franzese's aggressively frenetic tactics over the course of this lawsuit far surpassed appropriate bounds of zealousness in the legal profession, bordering on the unschooled. The record contains many instructive examples, and I list several here for clarity: She represented Plaintiffs in three concurrent lawsuits against these same Defendants over these same issues, and appears to have lied about the nature of these filings in an affidavit submitted alongside Plaintiffs' instant motion for attorney fees. *Compare* (Doc. 124, Ex. 1 at ID 3846) (Ms. Franzese: "Mr. Landry sought to convince me to dismiss the state case and bring Plaintiffs' claims to this forum, . . . After that, Plaintiffs filed amended counterclaims in that case, and commenced this case."), *with* (Doc. 134 at ID 3945) (Mr. Landry: "Plaintiffs filed their Counterclaim in the [Oscoda Circuit Court] on June 18, 2015. . . . Plaintiffs thereafter filed their Complaint in this federal case on October 5, 2011. . . Faced with defending two separate cases by the same Plaintiffs asserting the same issues, [I] . . . contacted [Ms. Franzese] and encouraged [her] to dismiss the state case and add those claims to this federal action *which had already been filed*. . . . Plaintiffs refused to dismiss the state case." (emphasis in original)), *and* (Doc. 134, Ex. 5) (confirming Mr. Landry's account). She constructed "breathtakingly

14

broad, burdensome, and intrusive" discovery requests "far exceeding the scope of relevant and proportional discovery under Rule 26(b)(1)" for the present case in the midst of the Oscoda Court trial with Greenwood. (Doc. 56 at 6). She filed and served a patently baseless First Amended Complaint against Oscoda County and Tim Whiting after Plaintiffs accepted an Offer of Judgment from them, (Docs. 54, 68), and refused to sign an order they proposed to dismiss the claims against them, leaving them "to continue to respond to motions that [did] not concern them," (Doc. 135 at 3). These examples are potent, for they illustrate behavior squarely within § 1927's concern. The fact that many more such examples exist proves telling.

These findings should not surprise Ms. Franzese. Indeed, this Court issued a firm warning regarding her "pattern of filing frivolous requests and objections without undertaking even a cursory examination of the federal rules of civil procedure or the Eastern District of Michigan Local Rules." (Doc. 103). Alas, she went on to file the instant motion for attorney fees, wildly labeling *Plaintiffs* the true prevailing party in this matter and offering a long-defunct timeliness defense to Defendants' respective motions, (Doc. 124).[6] I note that Ms. Franzese also filed a declaration urging the Court to desist from sanctioning her because "this is a civil rights case" and the award Defendants seek "would shut down" her law practice. (Doc. 140). Even this declaration, however, proceeds to double down on her earlier-asserted fiction that Mr. Landry invited her to file Plaintiffs' complaint in federal court, while accusing this Court—as well as the 81st

---

[6] These arguments—raised in Third Motion—are addressed below and found to be utterly devoid of merit. I reserve discussion thereof, however, for later.

District Court, and the Oscoda Circuit Court—of scheming to favor Defendants and "pervert[ing] the doctrine of *res judicata*" to avoid "any fair factual test of [Plaintiffs'] claims, the discovery necessary to prove them, [and] any meaningful damages on admitted liability, . . ." *Id.* Viewed holistically, "trial judges, applying the collective wisdom of their experience on the bench, could agree" that Ms. Franzese's conduct "falls short of the obligations owed by a member of the bar to the court" and "cause[d] additional expense to" First- and Second-Motion Defendants. *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987). She should be liable under 28 U.S.C. § 1927.

First- and Second-Motion Defendants each submitted the documents necessary to prove a fee award. (Doc. 112, Exs. 23-26); (Doc. 117, Exs. 18-19); *see Smith v. Khouri*, 481 Mich. 519, 531-32 (2008) ("The fees customarily charged in the locality for similar legal services can be established by testimony or empirical data found in surveys and other reliable reports."). The Court is satisfied that the calculations offered therein are reasonable, and Plaintiffs proffer no objection to the methods Defendants used. Accordingly, I recommend granting attorney fees in each amount—$102,174.80 for First-Motion Defendants, and $111,491.07 for Second-Motion Defendants—without alteration. Such amounts remain in line with the median prevailing rates in the community for attorneys with Defendants' respective levels of experience, and thus will not produce any "unjustified windfall." *Lee v. Thomas & Thomas*, 109 F.3d 302, 307 (6th Cir. 1997).

### 2.   **Third Motion**

In their Motion, Plaintiffs argue that they are 'prevailing parties' within the meaning of 42 U.S.C. § 1988 and 28 U.S.C. § 2412, and that they are entitled to attorney

fees. *See generally* (Doc. 124). At the outset, I note that Third Motion is *not* timely because § 2412—which permits thirty days to file a motion for attorney fees—plainly does not apply. Unlike the other statutory schemes at issue, § 2412 grants courts power to "award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against *the United States or any agency or any official of the United States* acting in his or her official capacity in any court having jurisdiction of such action," unless "expressly prohibited" by statute. 28 U.S.C. § 2412(b) (emphasis added). The United States is not a party to this action, and thus Plaintiffs had twenty-eight days— *not* thirty days—to file their motion for attorney's fees. L.R. 54.1.2. The clock timed out on May 11, 2017, and Plaintiffs did not file their motion until May 16, 2017.

Even if I were inclined to accede to Plaintiffs' calendar gymnastics, (Doc. 124 at ID 3839) (arguing that § 2412 applies and that May 15, 2017—"Peace Officers Memorial Day"—is a federal holiday, thus making the due date for Third Motion May 16, 2017 under Federal Rule of Procedure 6), their other arguments would fail. "Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt v. Helms*, 482 U.S. 755, 760 (1987). Plaintiffs' amended complaint was dismissed in its entirety. Perhaps recognizing that this fact does not bode well for them, they resort to arguing that the *prior state case* (which ultimately defeated their case here) demonstrated victory in *this Court*. (Doc. 124 at ID 3840-41). This is faulty logic, as the state court partial victory does not transmigrate into a federal court partial or full victory. Plaintiffs note that they received nominal damages in the Oscoda Circuit Court case, which may suffice for certain claims to fees in that

17

court, *e.g.*, *Rhodes v. Stewart*, 488 U.S. 1, 7 n.2 (1988), but likely not those from parties assessed nearly $10,000 in attorney fees (and denied attorney fees from the defendant) in the same suit for bringing frivolous claims. Plaintiffs further argue that William Raub has won injunctive relief in the past on the issues in this case against these parties—but William Raub never won injunctive relief on the merits of any case, let alone in this federal case. (Doc. 136, Ex. 2 at ID 4045-46). In this federal case, Plaintiffs' complaint was fully dismissed as failing to state a claim upon which relief could be granted. This result cannot, in any mentally sound manner, be viewed as a victory for the Plaintiffs.

Plaintiffs further argue that their series of lawsuits compelled Defendants to voluntarily change their unconstitutional ordinance and bring their facilities in line with the ADA, but little evidence exists to support this assertion—indeed, Defendants offered to voluntarily dismiss their sign-ordinance claim against Plaintiffs after Ms. Franzese identified the ordinance as unconstitutional and *before* Plaintiffs simultaneously filed multiple, nearly identical, claims against various Defendants here and in two other state courts. (Doc. 112, Ex. 10). Moreover, and as Plaintiffs well know, (Doc. 124 at ID 3839-40), the Supreme Court rendered this catalyst-theory-era argument obsolete over fifteen years ago. *See, e.g.*, *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 610 (2001) ("[W]e hold that the 'catalyst theory' is not a permissible basis for the award for attorney's fees . . . ."); *see also Chambers v. Ohio Dept. of Human Servs.*, 273 F.3d 690, 692 (6th Cir. 2001) ("[T]he Supreme Court issued an opinion [*Buckhannon*] invalidating the catalyst theory as a permissible basis for awarding attorneys fees.").

Plaintiffs make another argument in their motion for fees that more properly belongs in a response to Defendants' motions for fees. However, since Plaintiffs raised it in their motion, I will address it here. Plaintiffs argue that Defendants' unclean hands[7] should preclude their recovery of fees. Because they waited "more than a year to bring their dispositive motions based on *res judicata*," and could have discarded the suit earlier, Plaintiffs ask the Court to deny them fees. (Doc. 124 at ID 3842.)   Defendants, unsurprisingly, view the relevant history differently. *E.g.*, (Doc. 136 at 8) (blaming the dispositive-motion delay on Plaintiffs' frequent frivolous filings and resistance to needed discovery). "Where a complaint contains 'glaring legal deficiencies,' [and] the deficiencies and any ambiguities can be so easily resolved by motion that it is not unduly burdensome to defend. . . . [A] sanction is generally improper where a successful motion could have avoided any additional legal expenses by defendants." *In re Ruben*, 825 F.2d 977, 988 (6th Cir. 1987). This Court's eventual dismissal, however, relied on *res judicata*, and Defendants predicated that argument on both legal and factual similarities between prior cases and the present one. Defendants were permitted to assert the defense in their answers, as they did, and act on it as the case proceeded. Moreover, the record shows that various defendants took concrete steps to avoid further litigation more than once, and that Plaintiffs consistently rebuffed such efforts. *See* (Doc. 112, Ex. 10), (Doc. 134, Ex. 5).

---

[7] Plaintiffs do not appear to seek a fee award under § 1927, but nonetheless devote a significant portion of their brief to arguing that Defendants' attorneys should not themselves recover fees because they "vexatiously multiplied litigation for impermissible strategic purposes . . . ." (Doc. 124 at ID 2841) (capitalization corrected and underscoring removed). I construe this as an 'unclean hands' argument.

For these reasons, this Court should deny the Third Motion.

### D.   Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motions for Attorney Fees, (Docs. 112, 117), be **GRANTED**—*i.e.*, that Plaintiffs and Plaintiffs' counsel be held jointly and severally liable for the payment of: (a) $102,174.80 to Defendants Greenwood Township, Fred Lindsey, Thomas McCauley as Township Trustee, Jim Havrilla, and Larry Mathias, and (b) $111,491.07 to Defendants Linda Argue, Thomas McCauley, and Moon Lake Property Owners' Association. It is further recommended that Plaintiffs' Motion for Attorney Fees, (Doc. 124), be **DENIED**.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit*

*Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 26, 2017                           S/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge


**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: June 26, 2017                            By s/Kristen Castaneda
                                                Case Manager